# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Asa Euregetes Majeed,<br><br>   Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>   Defendant. | Case No.: 16-cv-01275-WQH-JLB<br><br>**Report and Recommendation**<br><br>[ECF Nos. 14, 15] |

This matter is before the Court on cross-motions for summary judgment. (ECF Nos. 14, 15.) Plaintiff Asa Euregetes Majeed moves under 42 U.S.C. § 405(g)[1] for judicial review of the Commissioner of Social Security Carolyn Colvin's ("Commissioner") final decision denying his claim for a period of disability and disability insurance benefits.

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. After careful review of the moving and opposing papers, the administrative record, the facts, and the applicable law, the Court hereby RECOMMENDS that Plaintiff's motion for summary judgment (ECF No. 14) be DENIED. The Court further RECOMMENDS that the Commissioner's

---

[1] "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . brought in the district court of the United States . . . . The court shall have the power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g) (2015).

1

cross-motion for summary judgment affirming the Administrative Law Judge's ("ALJ") decision (ECF No. 15) be GRANTED.

## I. BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on October 26, 2012, alleging disability commencing June 1, 2012.[2] (ECF No. 10-5 at 2.) The Commissioner denied the claims by initial determination on February 12, 2013. (ECF No. 10-2 at 26.) Plaintiff requested reconsideration of the initial determination on April 8, 2013. (ECF No. 10-4 at 9.) The Commissioner denied reconsideration on September 9, 2013. (*Id.* at 10–15; ECF No. 10-2 at 2.) Plaintiff requested a de novo hearing before an ALJ on October 27, 2013. (ECF No. 10-4 at 16–17.) The Commissioner granted this request and appointed an ALJ. (*Id.* at 18–29.) On October 9, 2014, Plaintiff, his attorney, and a vocational expert appeared before the ALJ, Keith Dietterle. (ECF No. 10-2 at 26.) In a decision dated December 16, 2014, the ALJ issued an unfavorable decision and found Plaintiff was not disabled through June 30, 2014, the last date insured. (*Id.* at 35.)

Thereafter, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's unfavorable decision, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 2.) Plaintiff then commenced this instant action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

The Social Security Act allows for unsuccessful applicants to seek judicial review of the Commissioner's final agency decision.[3] The scope of judicial review, however, is limited. The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings are based on legal error; or (2) the ALJ's determinations are not supported by

---

[2] *See* 42 U.S.C. § 423 (Disability insurance benefit payments); *see also id.* at §§ 416(i) (defining "period of disability"), 423(d)(1) (defining "disability" for purposes of entitlement to a period of disability or to disability insurance benefits).
[3] *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

substantial evidence in the record as a whole.[4] Substantial evidence is "more than a mere scintilla, but may be less than a preponderance."[5] Substantial evidence is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion."[6]

In making this determination, the Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.[7] Where the evidence can reasonably be construed to support more than one rational interpretation, the Court must uphold the ALJ's decision.[8] This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.[9]

## III. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[10] the ALJ first found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of June 1, 2012 through the date he was last insured of June 30, 2014. (ECF No. 10-2 at 28.) The ALJ then found that during this relevant time period, June 1, 2012 through June 30, 2014, Plaintiff had the following severe impairments: malignant neoplasm of the bladder; obesity; degenerative joint disease of the left knee; and osteoarthritic disease of the left hip.[11] (*Id.*) In making this determination, the ALJ explained that Plaintiff also had the following conditions that do not meet the criteria for severe impairments: heel spurs; mild degenerative changes of the left elbow; and renal stones. (*Id.*)

Next, the ALJ found that Plaintiff does not have an impairment or a combination of impairments that meet the severity required to stop analysis at step three and award

---

[4] *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000).
[5] *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).
[6] *Id.*; *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).
[7] *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).
[8] *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).
[9] *See Lewis*, 236 F.3d at 509.
[10] 20 C.F.R. § 404.1520.
[11] 20 C.F.R. Part 404, Subpart P. Appendix 1.

benefits. (*Id*. at 28–29.) Before considering step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work:

> with the following specific limitations he can sit for 6 hours in an 8-hour day; can stand and walk for 6 hours in an 8-hour day; can occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds; can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, and scaffolds; and cannot work at unprotected heights or around dangerous or fast moving machinery.

(*Id.* at 29.) In arriving at this RFC, the ALJ explained that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as well as opinion evidence. (*Id.*)

At step four, the ALJ compared the RFC assessed to the demands of Plaintiff's past relevant work as a telephone solicitor and customer service representative. (ECF No. 10-2 at 33–34.) In doing so, the ALJ relied on the testimony of the vocational expert to determine that Plaintiff could work as a telephone solicitor or customer service representative. (*Id.* at 34.) The ALJ therefore concluded at step four that Plaintiff "was not under a disability, as defined by the Social Security Act, at any time from June 1, 2012, the alleged onset date, through June 30, 2014, the date last insured." (*Id.*)

## IV. DISCUSSION

Plaintiff challenges the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible. (ECF No. 14 at 4–14.) More specifically, Plaintiff argues that this credibility finding cannot stand for the following three reasons: (1) the ALJ's analysis in support of this finding merely recited the relevant "boilerplate" Social Security Act regulation on subjective complaints of pain or other symptoms (*id*. at 6–7); (2) the ALJ's sole basis for discrediting Plaintiff's testimony about the severity of his symptoms was that it lacks support in the objective medical evidence (*id*. at 7–9); and (3) the ALJ erroneously believed that Plaintiff only had care that was conservative in nature (*id*. at 9–10). Based on these arguments, Plaintiff moves for summary judgment on the ground that the ALJ failed to meet the clear

4

and convincing legal standard for discrediting Plaintiff's testimony about the severity his subjective symptoms. (ECF No. 14.)

The Commissioner opposes Plaintiff's motion and cross-moves for summary judgment, arguing the ALJ properly assessed Plaintiff's credibility. (ECF Nos. 15, 16.) For the reasons explained below, the Court concludes that the ALJ articulated clear and convincing reasons to discredit Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms.

### A. Legal Standard

If an ALJ finds that a claimant's testimony as to the severity of his pain and impairments is unreliable, the ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."[12] As outlined by the Ninth Circuit, there is a two-step process an ALJ is to employ to assess subjective pain testimony.[13] "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"[14] Absent such evidence, subjective pain testimony may be disregarded.[15] Second, if the ALJ determines that the claimant meets this threshold, "and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'"[16]

At issue here is the second step in the ALJ's two-step process of assessing subjective pain testimony. The Commissioner does not argue that there was evidence of malingering

---

[12] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).
[13] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007).
[14] *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).
[15] *Tommasetti*, 533 F.3d at 1039; *see also* 42 U.S.C. § 423.
[16] *Lingerfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

and that a lesser standard should consequently apply. As a result, the Court will apply the "specific, clear and convincing" standard to the ALJ's adverse credibility determination.[17]

To support a finding that the claimant was not credible, the ALJ must "point to specific facts in the record which demonstrate that [the claimant] is in less pain than [he] claims."[18] The ALJ must make specific findings "stat[ing] which pain testimony is not credible and what evidence suggests the complaints are not credible."[19] The ALJ can consider the following when assessing the claimant's credibility: (1) his reputation for truthfulness; (2) inconsistences in either his testimony or between his testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of his condition.[20]

The reviewing court must bear in mind that it should not "second-guess" an ALJ's credibility determination.[21] Accordingly, where an ALJ's credibility determination is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting the claimant's testimony are improper.[22] However, "[t]he clear and convincing standard is the most demanding required in Social Security cases,"[23] and thus, the standard "is not an easy requirement to meet."[24]

Courts may only review the ALJ's articulated rationale, and "[i]f the [ALJ's] decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for remand."[25] The Ninth Circuit has sympathized with the "large volume of

---

[17] *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (applying "clear and convincing" standard where the government did not argue that a lesser standard should apply based on evidence of malingering).
[18] *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).
[19] *Dodrill*, 12 F.3d at 918.
[20] *Thomas,* 278 F.3d at 958–59.
[21] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)); *see also Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984).
[22] *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008).
[23] *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).
[24] *Garrison v. Colvin*, 759 F.3d 995, 1105 (9th Cir. 2014).
[25] *Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (quoting *Williams v. Bowen*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987)).

disability cases that the agency must adjudicate," but "each case represents a citizen's claim of serious disability," and accordingly, courts should not take lightly their responsibility under 42 U.S.C. § 405(g).[26] Courts, in their reviewing authority, "should not be forced to speculate" the reasoning behind the ALJ's findings.[27]

Consequently, the Court must assess whether the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony concerning his subjective pain that are supported by substantial evidence in the record.

### B. "Boilerplate" Social Security Act Language

First, citing to *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), Plaintiff argues that summary judgment in his favor is warranted because the ALJ merely recited the relevant "boilerplate" Social Security Act regulation on subjective complaints of pain or other symptoms language to discredit Plaintiff's testimony regarding the severity of his symptoms. (ECF No. 14 at 6–7.) In *Bjornson*, the Seventh Circuit noted that the "boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."[28] However, here, the ALJ did not merely provide boilerplate language. As explained below, the ALJ informed this Court in a meaningful, reviewable way of the specific evidence that he used to make his credibility determination. Thus, Plaintiff's first argument for summary judgment fails.

### C. Objective Medical Evidence

Second, Plaintiff argues that summary judgment in his favor is warranted because the ALJ's sole basis for discrediting Plaintiff's testimony about the severity of his symptoms was that it lacks support in the *objective* medical evidence. (ECF No. 14 at 7–

---

[26] *Lewin v. Schweiker*, 654 F.2d 631, 634–35 (9th Cir. 1981) (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)).
[27] *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also Lewin*, 654 F.2d at 635 ("It is incumbent upon the examiner to make specific findings—the court may not speculate as to his findings." (quoting *Baerga*, 500 F.2d at 312)).
[28] *Bjornson*, 671 F.3d at 644–46.

9).  Defendant disagrees, arguing that Plaintiff misstates the ALJ's findings because the ALJ properly relied on Plaintiff's *overall* record and not solely on objective medical evidence. (ECF No. 15-1 at 6.) Defendant points out that the overall record upon which the ALJ relied "included objective and clinical findings, conservative treatment, contradicted statements, and medical opinions that all supported the ALJ's credibility finding." (*Id.*)  The Court agrees with Defendant that the ALJ based his credibility determination on Plaintiff's *overall* record and not solely on *objective* medical evidence.

With respect to the objective medical evidence, the ALJ properly considered it as a relevant factor when discrediting Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms.  Plaintiff argues "the assertion of the ALJ that Asa Majeed's testimony is not credible because it is inconsistent with the objective medical evidence is always legally insufficient" under *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). Plaintiff misstates the law. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."[29]

Here, the ALJ considered the entire case record and reasonably discounted Plaintiff's allegations of disabling pain based on other factors in addition to the contrary objective medical evidence. (ECF No. 10-2 at 29–33.)  Thus, Plaintiff's second argument for summary judgment fails.

### D. Conservative Treatment

Third, Plaintiff argues that summary judgment in his favor is warranted because the ALJ's finding that Plaintiff was not disabled is based on the ALJ's erroneous belief that Plaintiff's "has only had care that was conservative in nature." (ECF No. 14 at 9.)  The actual language of ALJ's opinion to which Plaintiff refers states: "The treatment records reveal the claimant received routine, conservative, and mostly nonemergent treatment

---

[29] *Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)).

**since the alleged onset date**." (ECF No. 10-2 at 30 (emphasis added).) Without acknowledging the ALJ's focus on the alleged disability onset date of June 1, 2012, Plaintiff contends that his treatment cannot be described as conservative in light of his knee surgery (in 1971), history of bladder cancer (in remission) with an internal catheter and urine bag, and use of narcotic pain medication. (ECF No. 14 at 9.) To support his argument that his pain was treated with narcotics, Plaintiff cites to discharge instructions from Scripps dated February 5, 2014 and December 8, 2013, which reference Norco and Vicodin, respectively. (*Id.*)

In response, Defendant argues that "the record contains evidence of conservative, effective treatment, supporting a finding that Plaintiff was less than fully credible." (ECF No. 15-1 at 7.) Defendant points to evidence in the record showing that many of Plaintiff's treatment records consisted of follow-up visits for refills of medication.[30] (*Id.*) On reply, Plaintiff acknowledges that it was permissible for the ALJ to consider certain factors, including type of pain medication and "treatment, other than medication, for relief of pain," but that "the ALJ failed to make any nexus between these factors and his discrediting of Mr. Majeed's subjective complaints." (ECF No. 17 at 3-4.) The Court disagrees with Plaintiff's characterization of the ALJ's opinion.

The ALJ articulated "specific, clear and convincing reasons" why Plaintiff's testimony was undermined by substantial evidence in the record showing Plaintiff's treatment during the relevant time period (June 1, 2012 through June 30, 2014) was routine, conservative, and mostly nonemergent. (*See* ECF No. 10-2 at 29–33.) A conservative course of treatment may serve as a basis for discrediting a claimant's allegations of

---

[30] Defendant further argues that, regardless of whether Plaintiff's use of narcotic medication may be deemed conservative treatment as a matter of law, Plaintiff's ability to effectively manage his pain supports the ALJ's finding that Plaintiff was less than fully credible. (ECF No. 15-1 at 7.) While this may be true, and despite the fact that on reply Plaintiff fails to point to evidence demonstrating otherwise, the ALJ does not explicitly state this to be a basis for his opinion. Therefore, the Court declines to address this argument.

disabling symptoms.[31]  Here, the ALJ did not fully credit Plaintiff's testimony about the severity of his debilitating pain and physical impairment because the record as a whole, including Plaintiff's conservative course of treatment, did not support the degree of limitations Plaintiff alleged for the period of disability.  (ECF No. 10-2 at 29–33.)

In analyzing Plaintiff's symptom testimony, the ALJ criticized the "general nature" of Plaintiff's symptom testimony.  (ECF No. 10-2 at 30.)  Notwithstanding this criticism, the ALJ identified statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms that the ALJ found to be not entirely credible, including that: (1) Plaintiff requires a cane for mobility (ECF No. 10-2 at 29, 33); (2) Plaintiff can "sit for about 35 to 40 minutes at a time and stand for 20 minutes at a time due to pain in his leg and back" (*id.* at 29); (3) Plaintiff "cannot walk a block" (*id.*); (4) Plaintiff "does not lift with his left hand and he can lift milk or sugar with his right hand" (*id.* at 30); (5) Plaintiff "takes naps every day and is lying down about 6 hours a day" (*id.*); and (6) Plaintiff "cannot stand for long periods" (*id.*).

The ALJ then went on to analyze whether Plaintiff's subjective allegations of pain were undermined by evidence in the record.  In doing so, the ALJ credited certain pain testimony and, as a result, decreased Plaintiff's residual functional capacity accordingly. (ECF No. 10-2 at 29–33.)  For example, the ALJ "decreased the postural capacities to an occasional basis to give some greater consideration to the claimant's subjective pain complaints."  (*Id*. at 32.)  However, with respect to Plaintiff's allegations of **debilitating** pain, the ALJ explained that these allegations appeared to be false and/or undermined by evidence of a conservative treatment plan throughout the relevant time period.  In this regard, the ALJ provided the following analysis:

> The claimant testified that he was prescribed a cane about two months ago by [doctor] Harrison (he is a physician's assistant, not a doctor); however, the evidence does not show that a cane was ever prescribed or that the claimant medically needed

---

[31] *See*, *e.g.*, *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

> to use a cane. The treatment notes show that the claimant has normal gait, good mobility, lack of neurological deficits, and normal muscle strength, which are inconsistent with a need for a cane (Ex. 9F, pp. 8, 17, 49). Dr. Dao found that an assistive device for ambulation was not necessary (Ex. 6F, p. 6). Accordingly, the undersigned has discredited the claimant's allegation regarding the use of a cane. In addition, the claimant has received conservative treatment for his musculoskeletal impairments consisting of pain medications and range of motion exercises. He has only received treatment from a primary care provider. His visits to the emergency room are not for emergent purposes, as he drives himself to the hospital and typically asks for pain medication. Moreover, he has been advised to control his diet and walk to lose weight. The lack of more aggressive treatment, possible surgical intervention, alternative treatment modalities, or treatment by a specialist at this point suggests the claimant's symptoms and limitations were not as severe as he alleged. The claimant testified that his doctor told him he would need surgery and has referred him to a specialist; however, since the record does not currently corroborate this information, the undersigned cannot speculate as to the claimant's future findings and limitations.

(ECF No. 10-2 at 33.)

Plaintiff contends that his treatment cannot be described as conservative in light of his knee surgery, history of bladder cancer with an internal catheter and urine bag, and use of narcotic pain medication. (ECF No. 14 at 9.) The Court is not persuaded. Plaintiff underwent knee surgery in 1971 and his bladder cancer was in remission during the relevant time period (June 1, 2012 through June 30, 2014) – these facts were considered by the ALJ and they do not negate the reasonableness of the ALJ's reasoned conclusion that Plaintiff's treatment as a whole during the relevant time period was routine, conservative, and mostly nonemergent. Further, with respect to Plaintiff's use of narcotics for his pain, the ALJ fairly summarized the portions of the record showing that Plaintiff's primary care physicians did not regularly prescribe Plaintiff narcotics (*e.g.* Vicodin and

Norco).³² Thus, substantial evidence supports the ALJ's reasoned conclusion that Plaintiff's treatment plan for pain was conservative and narcotic pain medication was not part of Plaintiff's regular treatment plan.³³ Therefore, Plaintiff's third argument for summary judgment fails because Plaintiff's conservative treatment of his pain during the relevant time period was a specific, clear and convincing reason to find Plaintiff's allegations of debilitating pain less than fully credible.

### E.  Daily Activities

Following Plaintiff's third argument, Plaintiff adds an argument that the ALJ erred in using Plaintiff's descriptions of his activity level as a basis to find Plaintiff's subjective complaints were less than fully credible.³⁴ (ECF No. 14 at 11–12.) Plaintiff's reported daily activities included that he can drive, use public transportation, shop, climb stairs, handle personal care tasks and his finances, make sandwiches and heat leftovers, and accomplish some chores such as sweeping, and washing dishes and doing laundry. (ECF No. 10-2 at 30.) However, the ALJ did **not** rely on Plaintiff's descriptions of his activity

---

³² On this issue, the ALJ reviewed Plaintiff's medications and noted that in June 2012, Plaintiff's "medications consisted of only multivitamins and aspirin" (ECF No. 10-2 at 31); in August 2012, Plaintiff was "prescribed Motrin" (*id.*); in October 2013, Plaintiff reported taking Motrin and Tramadol (*id.*); in December 2013, Plaintiff "requested Vicodin, but the doctor encouraged him to take ibuprofen" (*id.* at 32); and in February 2014, an emergency room visit for left knee pain resulted in "a prescription for pain medication" – Norco – "until he could follow up with his primary care physician for his chronic problems" (*id.*; ECF No. 10-7 at 128).

³³ *See Batson*, 359 F.3d at 1198 ("When the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion.").

³⁴ Plaintiff's counsel uses the words "First," "Second," and "Third" to identify and transition between Plaintiff's three arguments in support of his motion for summary judgment. (ECF No. 14.) No such transition is used to identify Plaintiff's argument concerning the ALJ's reliance on Plaintiff's daily activities. Although Plaintiff perhaps should have been clearer, the Court considers the argument to have been sufficiently distinctly made to support addressing it here. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003) (courts "'review only issues which are argued specifically and distinctly'"); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address whether the ALJ properly rejected claims of memory problems because the plaintiff "failed to argue this issue with any specificity in his briefing").

level as a basis to discredit Plaintiff's subjective complaints.[35] Rather, the ALJ found that "[s]ome of the mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are consistent with the residual functional capacity herein." (*Id.*) Thus, Plaintiff's argument fails. Plaintiff's reported daily activities are part of the substantial evidence in the record that supports the ALJ's residual functional capacity determination.

In sum, the ALJ concluded that Plaintiff's subjective complaints were "less than fully credible" by relying in detail on the entire record. The ALJ relied on the medical record and opinions by government doctors, but did not reject Plaintiff's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain. The ALJ also relied on the treatment that Plaintiff had undertaken. Further, the ALJ's residual functional capacity determination was supported by evidence concerning Plaintiff's daily activities. After thoroughly reviewing the record, this Court is satisfied that the ALJ's decision is supported by substantial evidence and is free of legal error. Accordingly, this Court "may not substitute [its] judgment for that of the Commissioner" and recommends that the ALJ's decision to deny Plaintiff's application for social security benefits be affirmed.[36]

## V. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** the following:

(1) Plaintiff's motion for summary judgment (ECF No. 14) be **DENIED**;

(2) The Commissioner's cross-motion for summary judgment (ECF No. 15) be **GRANTED**.

---

[35] Consequently, the Court makes no determination as to whether Plaintiff's reported daily activities constitute an additional specific, clear and convincing reason to reject Plaintiff's subjective claims of debilitating symptoms.

[36] *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) (citing *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998)).

IT IS HEREBY ORDERED that any written objections to this Report and Recommendation must be filed with the Court and served on all parties **no later than July 7, 2017**.  The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **July 14, 2017**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.[37]

Dated:  June 21, 2017

Hon. Jill L. Burkhardt
United States Magistrate Judge

---

[37] *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

14

16-cv-01275-WQH-JLB